## 32863.  GILLEY v. GLENS FALLS INSURANCE CO.

DECIDED FEBRUARY 24, 1950.

74

76

*O. W. Roberts Jr.*, for plaintiff in error.

*Boykin & Boykin*, contra.

TOWNSEND, J. (After stating the foregoing facts.) The testimony of the witness Amerine established that the policy had actually been issued. This being so, the burden was upon the defendant to show that it had been canceled in accordance with its terms, and the plaintiff could withstand a motion for nonsuit on this ground unless he disproved his right to recover by establishing the existence of other undisputed defensive facts showing that he was not entitled to recover because the policy had actually been so canceled. See *Clark* v. *Bandy*, 196 *Ga.* 546, 559 (27 S. E. 2d, 17). The court has no discretion in the matter of granting a nonsuit and, if there be any evidence whatever to sustain the action, it must go to the jury. *Gresham* v. *Stewart*, 31 *Ga. App.* 25 (119 S. E. 445). In passing on such a motion, the evidence should be construed in favor of the plaintiff. *National Land & Coal Co.* v. *Zugar*, 171 *Ga.* 228 (2) (155 S. E. 7). The defendant appears to rely upon three theories in his contention that the evidence, so construed, affirmatively shows a cancellation of the contract of insurance:

The defendant contends that it was not necessary to give notice of cancellation because the policy itself had been surrendered to the company. There is no evidence that either the plaintiff, the named insured, or the Lincoln Discount Company in his behalf, ever committed any act that could be considered a surrender of the policy. The plaintiff testified in substance that the agent merely said, in reply to his inquiry, that the policy would not be backed up and returned from the home

office for about 30 days. Actual manual delivery of the policy is not essential to the validity of the contract unless made so expressly by its terms. See Code (Ann.) §§ 56-901, 56-911, and cases cited thereunder. While these provisions of our Code deal with fire and life insurance respectively, they follow the general rule that in the absence of a stipulation in the contract to the contrary, actual delivery may be dispensed with where the policy has been issued and the premium paid. See 29 Am. Jur. Title, Insurance, § 147. The fact that the policy had been temporarily retained by the agent of the defendant for purposes of backing and record, would not relieve the company of its duty under Condition 22 of the policy to give notice to the insured.

█ The defendant also contends that under the irrevocable power of attorney contained in the bill of sale to secure debt, the Lincoln Discount Company had authority to accept cancellation of the policy. However, the witness Parker testified that his company received no notice of cancellation until after the date of the collision. Price never testified positively that the letter dated May 15, 1947 to Lincoln Discount Corporation was ever mailed. His testimony related rather to a letter written after the collision and making reference to an earlier letter. There is, therefore, no evidence that notice was given, as required by the cancellation clause of the contract, and there was positive evidence that none was received by the finance company, either as agent for the plaintiff or otherwise.

█ The third contention is that the notice of cancellation to Smith Price was sufficient. This is not meritorious unless Price was the agent of either the plaintiff or the finance company with authority to receive such notice. The evidence here depicts Smith Price as a man operating a general insurance agency representing several insurance companies. The Lincoln Discount Corporation is engaged in lending money. The two enter into a contract whereby Price will effect loans for the finance company and then insure the property upon which the loans are made through his insurance companies in order to protect the Lincoln Discount Corporation from loss. Parker testified in this connection, "We had an agreement with Mr. Price that he loan money for the Lincoln Discount Corporation through his

office, giving him *the right to place* all insurance that we required and *that he was able to place* on any loan that he made. That was his revenue, plus 2% of the amount of the loan paid as a revenue for handling the contracts as a brokerage fee." (Emphasis supplied.)   In *National Union Fire Ins. Co.* v. *Macon Hardwood Lumber Co.,* 24 *Ga. App.* 726 (102 S. E. 180), it was held that whether or not a broker is such an agent of the insured as will give him authority to accept notice of cancellation depends upon whether he had been authorized merely to procure insurance for the owner, in which event notice to him would be insufficient, or whether he was a continuing agent with power to keep the property insured and to select the insurer, in which case the notice would be effective.   While Price apparently had the right to select an insurer from among the companies he represented, his agency, under the plaintiff's testimony, extended only to the placing of insurance.   It follows that, insofar as the placing of loans is concerned, Price was the agent of Lincoln Discount Corporation, but insofar as the insurance is concerned, he was the agent of the defendant, and he would have no more authority to cancel the insurance of the Lincoln Discount Corporation without notifying it then he would have in connection with any other customer.   The right to cancel a policy of insurance can be exercised only because it is reserved in the policy, and can be exercised only as therein provided. *Farmers Mutual Fire Ins. Co.* v. *Harris,* 50 *Ga. App.* 75, 81 (177 S. E. 65).   Assuming, but not deciding, that the insurance company could rely on the power of attorney in the contract between the plaintiff and the finance company, rather than on the unambiguous provisions of its own policy (especially as to that sum in excess of the debt due the finance company, and in which it had no interest) it does not appear that the finance company ever delegated to Smith Price any authority which would permit the latter to cancel insurance contracts without notice to it.

■ The plaintiff further excepts to the ruling out of certain conversations between Price and Gilley relative to the accident. The court held, regarding these conversations, "I let stay in that he notified Mr. Price he sustained a loss.   All the other I rule out."   If the court intended thereby to rule out the testimony of the plaintiff to the effect that he had requested papers

to fill out, to which the agent replied that there were none, the policy had been canceled, such a ruling would be erroneous, as this testimony is relevant on the question of whether the plaintiff complied with § 12 of the policy relative to his duties when loss occurs. In *Phenix Insurance Co.* v. *Searles,* 100 *Ga.* 97 (4) (27 S. 779), it was held: "A statement made by such an agent to the insured, within the time during which the latter, under the terms of the policy, was allowed to furnish proofs of loss, that the company declined or refused to pay the loss, will amount to a·waiver of such proofs." Since the defendant insurance company, through its agent Price, declined to pay the loss on the ground that the policy had been previously canceled, such refusal amounted to a waiver of the requirement in the policy relating to proof of loss. Further, it must be remembered that the plaintiff had never seen the policy and therefore had no possible way of knowing, unless informed by Price, what his duties were in this regard.

The trial court erred in granting the motion for a nonsuit because there was evidence making it a question of fact for the jury as to whether the policy sued upon had in fact been canceled previous to the date of the collision.

*Judgment reversed. MacIntyre, P. J., and Gardner, J., concur.*